UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| BELSAI D.S., | No. 25-cv-3682 (KMM/EMB) |
| Petitioner | |
| v. | **ORDER** |
| PAMELA BONDI, et al., | |
| Respondents. | |

Petitioner Belsai D.S. seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Because the Court concludes that Mr. D.S. is in custody in violation of the laws of the United States, his habeas petition is granted to the extent that he seeks an order requiring Respondents to provide him with a bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a).

## BACKGROUND

*Removal Proceedings and Detention*

This habeas case requires consideration of several provisions of the immigration laws. The government wishes to detain Mr. D.S. while it takes steps to remove him from the United States. *See generally* 8 U.S.C. § 1229a (discussing removal proceedings). Ordinarily, when a noncitizen is detained by immigration authorities because he is subject to removal proceedings, he is entitled to a bond hearing under 8 U.S.C. § 1226(a). At such a bond hearing, if the noncitizen can show that he is neither a flight risk nor a danger to the community, he may be released on conditions of supervision. *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006).

If, however, a person in removal proceedings has previously been convicted of one or more serious felonies, Congress has provided that he must be detained until he is removed. 8 U.S.C. § 1226(c). In January 2025, Congress amended the immigration laws through the Laken Riley Act,

1

Pub. L. No. 119-1, 139 Stat. 3 (2025). That amendment provides that noncitizens who enter the United States without inspection or lacking valid documentation are subject to § 1226(c)'s mandatory detention provisions, but only when they have been arrested, charged with, or convicted of certain crimes. 8 U.S.C. § 1226(c)(1)(E).

Another relevant provision of the immigration laws concerning detention of noncitizens is 8 U.S.C. § 1225. Generally, § 1225 governs the inspection and expedited removal of arriving aliens by immigration officers. It provides that "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3). Further, it states that "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter as an applicant for admission." *Id.* § 1225(a)(1). When an alien arrives in the United States and an immigration officer determines that he is inadmissible, the officer is required to order the person removed from the United States without a hearing or further review, except in situations where the alien indicates that he intends to pursue asylum. *Id.* § 1225(b)(1)(A)(i). And "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." *Id.* § 1225(b)(2)(A). Thus § 1225(b) requires the detention of arriving aliens "at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

### *Relevant Factual Background and Petitioner's Claims*

Mr. D.S. is a native and citizen of Mexico, but he has resided in the United States for most of his life. He arrived in the United States around 1990, when he was five years old. He entered the country without inspection or permission to enter. But in 2014, the government granted Mr. D.S. Deferred Action for Childhood Arrivals ("DACA"). Mr. D.S. has applied to renew his DACA status every two years since 2014. Most recently, on September 5, 2025, his DACA renewal application was approved and his DACA status extended through September 4, 2025. (Dkt. No. 8-4.)

Nevertheless, on August 12, 2025, federal immigration authorities arrested Mr. D.S. in Bloomington and served him with a Notice to Appear ("NTA") and an I-200 arrest warrant.[1] The NTA asserts that Mr. D.S. is subject to removal because he entered without inspection and was not admitted or paroled into the United States. (Dkt. No. 8-2 at 1.) Mr. D.S. was ordered to appear before an immigration judge on September 2, 2025. (*Id.* at 1.) Mr. D.S. has been in the custody Immigration and Customs Enforcement ("ICE") authorities since his arrest and is currently confined in the ICE detention center in Elk River, Minnesota.

On July 8, 2025, Respondents adopted a new interpretation of the authority to detain noncitizens who are present in the United States, but who entered without inspection or admission. Specifically, a memo from Todd Lyons to ICE employees states that "it is the position of the Department of Homeland Security that such aliens are subject to detention under [§ 1225(b)] and may not be released from ICE custody except by . . . parole. These aliens are also ineligible for a

---

[1] The record reflects that on August 10, 2025, Mr. D.S. was arrested by Bloomington Police Department officers on charges of violating a domestic abuse-no contact order. (Dkt. No. 8-3 at 5.) This resulted in ICE officials receiving notifications of biometrics leading them to investigate further whether Mr. D.S. was subject to removal. (*Id.* at 4.) The arrest at issue does not make Mr. D.S. subject to mandatory detention under either § 1226(c) or the Laken Riley Act.

custody redetermination hearing ('bond hearing') before an immigration judge and may not be released for the duration of their removal proceedings." (Dkt. No. 8-1.) According to this memo reflecting an interpretation of the government's detention authority under the immigration laws, "[f]or custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated." (*Id.*; *see also* Dkt. No. 8-5.)

Mr. D.S. seeks a declaratory judgment that he is not subject to detention under 8 U.S.C. § 1225(b)(2) and is instead detained pursuant to § 1226(a)(1). Therefore, he asserts that he is entitled to a bond hearing. (Pet., Count One.) He claims that denying him eligibility for bond violates § 1226(a)(2)(A) and several immigration-related regulations (*id.*, Count Two, Count Four), that refusing to provide him a bond hearing as required by the statute violates his right to due process under the Fifth Amendment (*id.*, Count Three), and that applying the mandatory detention provision in § 1225(b)(2) violates the Administrative Procedure Act ("APA") (*id.*, Count Five).

## DISCUSSION

### I. Habeas Corpus

A district court may grant a writ of habeas corpus to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). The right to challenge the legality of a person's confinement "through a petition for a writ of habeas corpus . . . extends to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); and *Demore v. Kim*, 538 U.S. 510, 517 (2003)).

"Petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, he must satisfy his burden of proof by a preponderance of the evidence.'" *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (quoting *McDonald v. Feeley*, 535 F. Supp. 3d 128, 135 (W.D.N.Y. 2021)) (cleaned up); *Lallave v. Martinez*, 609 F. Supp. 3d 164, 171 (E.D.N.Y. 2022) (same) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)); *Bradin v. United States Prob. & Pretrial Servs.*, No. 22-cv-3032-JWL, 2022 WL 1154622, at *3 (D. Kan. Apr. 19, 2022) (citing cases discussing burden of proof in a habeas case under § 2241).

## II.     Analysis

Respondents present several arguments for why the Court should deny the habeas petition and dismiss this action. First, they argue that the Court lacks subject-matter jurisdiction. Second, they argue that several of the named Respondents (DHS, ICE, Sirce Owen, and EOIR) are not proper parties to this case because they are not the person or persons with custody over Mr. D.S.[2] Respondents further argue that Mr. D.S.'s claim under the APA is not properly included in his habeas petition. Fourth, they argue that Mr. D.S.'s claim fails on its merits because § 1225(b) makes his detention mandatory.

---

[2] Respondents are correct that the Supreme Court has explained that the "proper respondent to a habeas petition is the person who has custody over the petitioner." *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004). Respondents do not suggest that Attorney General Pamela Bondi, Secretary of Homeland Security Kristi Noem, or the Acting Director of the St. Paul Field Office for Immigration and Customs Enforcement Samuel Olson should be dismissed. However, Respondents do not state which of them are proper respondents to Mr. D.S.'s petition who would be bound to comply with an order granting the writ and requiring a bond hearing for Mr. D.S. Nor does the Court find that the issue whether APA relief could also be available in a case asserting habeas claims has been adequately briefed such that the Court can resolve it on the present record. Accordingly, at this time, the Court declines to dismiss any of the named Respondents.

As discussed below, the Court concludes that it has jurisdiction over Mr. D.S.'s habeas claim regarding the lawfulness of his current detention. Further, the Court grants the petition on the merits of Mr. D.S.'s claims in Count One to the extent he seeks (1) a declaration that he is not subject to detention under 8 U.S.C. § 1225(b)(2) and is instead detained pursuant to 1226(a)(1); and (2) an order requiring that he be provided a bond hearing. Because that is the appropriate habeas relief available under 28 U.S.C. § 2241, the Court finds it unnecessary to engage in extended analysis of the remaining claims in the petition at this time, including any request for relief under the APA.

### A. Jurisdiction

Respondents first argue that this Court lacks jurisdiction to decide any of the issues presented in the habeas petition. Respondents contend that judicial review is prohibited by 8 U.S.C. §§ 1252(g), 1226(e), 1252(a)(5), and 1252(b)(9). The Court concludes that it has jurisdiction over Mr. D.S.'s habeas petition challenging the legality of his detention without a bond hearing.

In 28 U.S.C. § 2241, Congress explicitly provided that district courts have the power to grant a writ of habeas corpus to a person who is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). And habeas corpus review has long played an important role in immigration cases. As the Supreme Court has said:

> Before and after the enactment in 1875 of the first statute regulating immigration, 18 Stat. 477, . . . [federal habeas corpus] jurisdiction was regularly invoked on behalf of noncitizens, particularly in the immigration context. . . . In case after case, courts answered questions of law in habeas corpus proceedings brought by aliens challenging Executive interpretations of the immigration laws.

*INS v. St. Cyr*, 533 U.S. 289, 305–07 (2001) (citations and footnotes omitted). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Id.* at 301(citations

6

omitted); *see also Boumediene v. Bush*, 553 U.S. 723, 742–43 (2008) (discussing the history of the writ, explaining that the Framers' "inherent distrust" of undivided power led to the adoption of separation-of-powers principles that serve "not only to make Government accountable but also to secure individual liberty," and because that structure, "like the substantive guarantees of the Fifth and Fourteenth Amendments . . . protects persons as well as citizens, foreign nationals who have the privilege of litigating in our courts can seek to enforce separation-of-powers principles").

It is true, however, that Congress has the power to modify access to the writ under certain circumstances. *See Ozturk v. Trump*, No. 2:25-cv-374, 2025 WL 1145250, at *12 (D. Vt. Apr. 18, 2025) ("Congress may modify or eliminate the right to seek the writ if Congress provides 'a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention.'") (quoting *Swain v. Pressley*, 430 U.S. 372, 381 (1977)). Congress included certain "jurisdiction-stripping" provisions in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1996), and the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302 (2005). And the REAL ID Act notes that the jurisdiction-stripping provisions of the IIRIRA apply to certain habeas petitions. Pub. L. No. 109-13, § 106, 119 Stat. 302. However, as explored below, the jurisdictional provision Respondents argue proscribes the Court's review here does not eliminate habeas jurisdiction over all immigration-related detention claims, and it does not extend to the claim Mr. D.S. asserts in Count One of his petition.

As noted, the government claims the Court lacks jurisdiction under § 1252(g), which reads as follows:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any

7

>   alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). The Supreme Court has explained that this provision is narrow—it applies "only to three discrete actions that the [DHS Secretary] may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("*AADC*"); *see also Jennings*, 583 U.S. at 294 ( explaining that "we read the [arise from] language [in 8 U.S.C. § 1252(g)] to refer to just those three specific actions themselves") (citing *AADC*, 525 U.S. at 482–83).

Here, at least with respect to Mr. D.S.'s request for an order requiring that he receive a bond hearing, the Petition asserts no challenge to the decision to commence removal proceedings, adjudicate whether Mr. D.S. may be removed from the United States, nor execute a removal order. Mr. D.S. does not ask the Court to bar the immigration authorities from starting proceedings to effect his removal. Nor does he request any order that prevents or interferes with a decision that he is subject to removal. *See Jose J.O.E. v. Bondi*, 2025 WL 2466670, at *5 (D. Minn. Aug. 27, 2025) (finding habeas jurisdiction extended to the narrow question whether a noncitizen is subject to discretionary detention under 8 U.S.C. § 1226 or mandatory detention under § 1225(b)(2)). Instead, Mr. D.S. challenges the lawfulness of his detention without bond as contrary to the laws of the United States—directly within the ambit of habeas. *See* 28 U.S.C. § 2241(c)(3). Section 1252(g) cannot be read to deprive the Court of jurisdiction to consider a habeas petition raising such a claim, and Respondents urge the Court to read it broadly in spite of the Supreme Court's characterization of its reach as "narrow." *AADC*, 525 U.S. at 487. Indeed, "custody proceedings are independent of 'commencing' removal proceedings under § 1226, for which a separate jurisdictional provision applies, 1226(e). Respondents' position that detention is mandatory for all

8

who enter without inspection would effectively remove discretion, and would render § 1226(e) inapplicable, and § 1252(g) irrelevant." *Maldonado v. Olson*, No. 25-cv-3142 (SRN/SGE), 2025 WL 2374411, at *6 (D. Minn. Aug. 15, 2025).[3]

For these reasons, the Court finds that § 1252(g) does not impose a jurisdictional bar to the Court's consideration of Mr. D.S.'s habeas claim.

### B. Mandatory or Discretionary Detention

As noted above, Mr. D.S. argues that he is being detained in violation of the immigration laws because he is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and is instead subject to the discretionary detention provisions of 8 U.S.C. § 1226(a), which requires that he be given a bond hearing. Respondents argue that Mr. D.S. is properly detained pursuant to the mandatory detention provisions of § 1225(b)(2) because he entered and has remained in the United States without inspection or admission and is therefore deemed an "applicant for admission" to whom such mandatory detention applies. Having carefully considered the parties' arguments, the Court concludes that § 1225(b)(2) is not applicable to Mr. D.S., he is subject to the discretionary detention regime under § 1226(a), and his continued detention with a bond hearing is contrary to

---

[3] Respondents argue that § 1252(g) "also bars district courts from hearing challenges to the *method* by which the government chooses to commence removal proceedings, including the decision to detain an alien pending removal." (Dkt. No. 11 at 10 (citing *Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016) ("By its plain terms, [§ 1252(g)] bars us from questioning ICE's discretionary decisions to commence removal" and also to review "ICE's decision to take [plaintiff] into custody and to detain him during removal proceedings.")).) The Court rejects this argument for the same reasons that United States District Judge Susan Richard Nelson rejected the identical argument in *Maldonado*. 2025 WL 2374411, at *5–6 (discussing *AADC* and *Jennings*).

Respondents also urge the Court to follow the conclusion reached in another recent case from this District involving similar claims to those raised by Mr. D.S.—*S.Q.D.C. v. Bondi*, No. 25-cv-3348 (PAM/DLM), 2025 WL 2617973, at *2 (D. Minn. Sept. 9, 2025). The *S.Q.D.C.* court found that § 1252(g) deprived it of jurisdiction to consider the habeas petition because his challenge to detention stemmed from the decision to commence such proceedings. *S.Q.D.C.*, 2025 WL 2617973, at *2. For the reasons discussed above, the undersigned respectfully disagrees with the conclusion reached by the Court in *S.Q.D.C.*

the laws of the United States. If Respondents seek to continue detaining Mr. D.S., they must provide him with a bond hearing.

This is not the first case in which a federal court has been asked to determine which side of that argument is the better reading of the law. Indeed, it is not the first time this Court has been asked to resolve this question. *See, e.g.*, *Diosdado A.V. v. Bondi*, No. 25-cv-3162 (KMM/ECW), Doc. No. 16 (D. Minn. Aug. 19, 2025) (bench order granting motion for preliminary injunctive relief). Overwhelmingly, courts have rejected the interpretation offered by Respondents that § 1225(b)(2) requires the detention of all noncitizens living in the country who are "inadmissible" because they entered the United States without inspection. *See, e.g.*, *Lopez Benitez v. Francis*, No. 25-Civ-5937, 2025 WL 2371588, *9 (S.D.N.Y. Aug. 13, 2025); *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *8 (D. Mass. July 24, 2025); *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *8 (D. Mass. July 7, 2025); *Garcia v. Noem*, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *6 (S.D. Cal. Sept. 3, 2025); *Lopez-Campos v. Raycraft*, No. 2:25-cv-124862025 WL 2496379, at *8 (E.D. Mich. Aug. 29, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE-KDM, Doc. 20 at 7 (W.D. La. Aug. 27, 2025); *Benitez v. Noem*, No. 5:25-cv-02190-RGK-AS, Doc. 11 at 5 (C.D. Cal. Aug. 26, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025, at *10 (D. Md. Aug. 24, 2025); *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827, at *13 (D. Mass. Aug. 19, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW, 2025 WL 2379285, at *2 (C.D. Cal. Aug. 15, 2025); *Maldonado*, 2025 WL 2374411, at *13; *dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988, at *8 (D. Mass. Aug. 14, 2025).[4]

---

[4] See also the lengthy string citation in Petitioner's Traverse—Dkt. No. 13 at 24–27.

This Court joins that chorus. As these other courts have observed, Respondents' interpretation of § 1225(b)(2) is unpersuasive. First, that interpretation does not follow from the plain language of § 1225(b)(2) because a noncitizen in the position of Mr. D.S. is not "seeking admission." *Martinez*, 2025 WL 2084238, at *2 (explaining that for § 1225(b)(2)(A) to apply, "an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) not clearly and beyond doubt entitled to be admitted'"). One who is "seeking admission" is presently attempting to gain admission into the United States. *Id.* at *6 (discussing the plain meaning of "seeking"); *see also Lopez Benitez*, 2025 WL 2371588, at *7 (interpreting "seeking admission" to mean a person who is actively "seeking" "lawful entry"); *Lopez-Campos*, 2025 WL 2496379 ("'[S]eeking admission' . . . implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection."). Through its reading of the statutory definition of "applicant for admission" in § 1225(a)(1), the government has simply elided the "seeking admission" language. *Lopez Benitez*, 2025 WL 2371588, at *6 (explaining how the government's preferred interpretation would simply strike the phrase "seeking admission" from the statute in violation of the rule of statutory interpretation prohibiting a construction that turns terms into surplusage).

Second, a straightforward reading of § 1226(a) suggests that it applies to a noncitizen like Mr. D.S. Section 1226(a) allows the arrest of an alien on a warrant issued by the Secretary of DHS "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). It further provides that unless the person falls into the mandatory-detention category of § 1226(c), DHS may detain or release the alien on bond or conditional parole. 8 U.S.C. § 1226(a)(1)–(2); *Jennings*, 583 U.S. at 289 (explaining that § 1226(c) "carves out a statutory category of aliens who may *not* be released under § 1226(a)"). "Importantly, the plain text of

11

Section 1226(c) includes noncitizens who are 'inadmissible' (meaning they have not been admitted to the United States) as well as those who are 'deportable' (meaning they were previously admitted to the United States)." *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1256 (W.D. Wash. Apr. 24, 2025). Furthermore, under the recent amendments to § 1226(c) as a result of the passage of the Lakin Riley Act in 2025, detention is mandatory for any noncitizen who, unlike Mr. D.S., is *both* charged as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as an "alien present in the United States without being admitted or paroled" *and* "charged with, is arrested for, is convicted of, or admits" to committing certain crimes. 8 U.S.C. § 1226(c)(1)(E). This recent amendments to the statute would be rendered superfluous if the government were correct that § 1225(b)(2) *already* mandated the detention of every noncitizen who is present in the United States without being admitted. *Gomes*, 2025 WL 1869299, at *6; *Lopez Benitez*, 2025 WL 2371588, at *7; *Maldonado*, 2025 WL 2374411, at *12 ("The Court will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2)."); *Martinez*, 2025 WL 2084238, at *7.

Third, the Court agrees with those courts that have found the government's proposed interpretation of § 1225(b) at odds with the context and structure of the provisions governing detention of noncitizens who are arriving at the border and those who are already present in the country. *See, e.g.*, *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *4–5 (E.D. Mich. Sept. 9, 2025) ("The Court finds that the overall context of § 1225 limits the scope of the terms 'applicant for admission' and 'seeking admission' in § 1225(b)(2)(A)" in light of the subjects § 1225 expressly addresses and the congressional choice to "separate[] removal of arriving aliens from its more general section for 'Apprehension and detention of aliens'" in § 1226); *Lepe v. Andrews*, No. 1:25-cv-1163-KES-SKO (HC), 2025 WL 2716910, at *6 (E.D. Cal. Sept. 23, 2025) (finding the government's position "disregards the context of sections 1225 and 1226 and the

12

broader statutory scheme"); *Vazquez v. Feeley*, No. 2:25-cv-01542-RFB-EJY, 2025 WL 2676082, at *13 (D. Nev. Sept. 17, 2025) ("[T]he Court finds the structure of § 1225(b)(2) further indicates that it authorizes mandatory detention for noncitizens entering, attempting to enter, or who have recently entered the U.S., and does not encompass individuals like Petitioner, who entered long ago, are not taking affirmative steps that could be characterized as "seeking admission," and have been residing in the U.S. for years."). The observations in these cases are consistent with the Supreme Court's observation in *Jennings* that § 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings," while § 1225 provides for detention of those who are "seeking admission into the country." 583 U.S. at 289; *Lepe*, 2025 WL 2716910, at *6 (discussing the summary of the different applications for these provisions recognized by the *Jennings* Court).

Finally, although secondary to the straightforward interpretation of the statutory language discussed above, the Court also agrees with other decisions addressing this issue that Respondents' interpretation here is at odds with both the relevant legislative history and longstanding agency practice. *See Maldonado*, 2025 WL 2374411, at *11–12 (discussing the "longstanding practice of the government" to treat noncitizens who resided in the United States, but who had entered without inspection, as subject to § 1226(a) and the legislative history of the IIRIRA); *Vazquez*, 2025 WL 2676082, at *15–16 (same); *Rodriguez*, 779 F. Supp. 3d at 1260–61 (same).[5]

---

[5] In addition, the Court finds the BIA's recent interpretation of the meaning of § 1225(b) reflected in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), to be inconsistent with the statutory language, and therefore unpersuasive. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (noting that constructions of statutes offered by the Executive Branch contemporaneous with the passage of a law may be entitled to greater respect). However, the Court finds that it would be premature to reach a decision on the merits of Petitioner's request for the Court to exercise its power in this habeas case to "set aside" and "declare that the practice of denying bond eligibility to noncitizens like Petitioner" is unlawful pursuant to the APA. (Dkt. No. 13 at 28.)

For these reasons (and others discussed in the long list of cases cited above), the Court finds that Mr. D.S.'s detention is governed by § 1226(a)'s discretionary framework, and he is not subject to § 1225(b)'s mandatory detention procedure. Respondents' detention of Mr. D.S. without providing a bond hearing is, therefore, contrary to the laws of the United States. Respondents must provide Mr. D.S. a bond hearing without further delay, failing which any continued detention would be unlawful, and his immediate release would be required.

## ORDER

Consistent with the foregoing, **IT IS HEREBY ORDERED THAT**:

1. Petitioner Belsai D.S.'s petition for a writ of habeas corpus (Dkt. No. 1) is **GRANTED** as follows.

2. Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2), and is instead subject to detention, if at all, pursuant to the discretionary provisions of 8 U.S.C. § 1226(a)(1).

3. Respondents must provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within seven days of the date of this Order.

4. If Respondents do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, Petitioner must be immediately released from detention.

5. Within ten days of the date of this Order, the parties shall provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order, or if no bond hearing was held, advise the Court regarding Petitioner's release. Further, the parties shall advise the Court whether any additional proceedings in this matter are required and submit any proposals for the scope of further litigation.

Date: October 1, 2025

*s/Katherine Menendez*
Katherine Menendez
United States District Judge